**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

In re *Ex Parte* Application of Frank Schmitt, as Insolvency Administrator of Phoenix Kapitaldienst GmbH

Applicant,

For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery

Case No. ______________

**EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Frank Schmitt (the “Applicant”), the duly appointed Insolvency Administrator of Phoenix Kapitaldienst GmbH (“Phoenix”), by his undersigned counsel, hereby files this application (the “Application”) seeking information for use in a foreign proceeding, and in support thereof represents as follows:

## I. FACTUAL BACKGROUND

### A. Description of Phoenix and Nature of Fraud

Prior to commencement of its insolvency proceeding, Phoenix was a securities investment firm founded in Germany around 1977. Phoenix was enrolled in the German Entschädigungseinrichtung der Wertpapierhandelsunternehmen (the “EdW”), which is an insurance fund that provides compensation to investors for losses pursuant to the German Deposit Insurance and Investor Compensation Act (the “EAG”).

Phoenix represented that it primarily traded on the futures markets and administered from 1992 an investment vehicle known as the “Phoenix Managed Account” (the “Fund”). Phoenix, through its former CEO Dieter Breitkreuz and its former head trader, Michael Milde, told

investors that the Fund was used for trading in derivatives and had substantial and sustained annual returns in excess of ten (10) percent. Based upon these representations, more than 30,000 investors worldwide invested in the Fund, and Phoenix was able to amass more than EUR 500 million in investments between 1992 and March 2005.

Phoenix was a ponzi scheme in reality, however. Between 1993 and 2005, the Fund actually sustained losses of at least EUR 58 million. To hide these losses and keep the fraud from being discovered, Mr. Milde created documents and falsified accounting statements to investors. Although Phoenix had been required to produce audited financial statements, the auditor did not locate numerous inconsistencies which may have led to discovery of this fraud earlier.

This fraud may have continued in perpetuity had not certain unanticipated intervening events occurred. On April 7, 2004, Mr. Breitkreuz and several members of his family died in an airplane crash in Switzerland. Mr. Breitkreuz's heirs appointed new management for Phoenix. Thereafter, Mr. Milde continued operation of Phoenix on his own.

Members of the new management discovered the fraud in March 2005, including the falsification of a bank account from a well-known brokerage firm in Britain, and the sordid state of Phoenix's financial affairs. These directors disclosed Phoenix's accounting irregularities and its insolvency to the German Financial Supervisory Authority ("BaFin").

**B. The German Involuntary Insolvency Proceeding**

On March 14, 2005 (the "Application Date"), BaFin filed an application and commenced involuntary insolvency proceedings against Phoenix in the District Court - Insolvency Court (*Insolvenzgericht*) of Frankfurt am Main, Germany (the "German Court"). The German Court appointed the Applicant as the provisional insolvency administrator to secure the assets of this

insolvency estate. On July 1, 2005, the German Court appointed the Applicant as the permanent insolvency administrator to administer the assets of this insolvency estate.

The Applicant and his team, coordinating with German prosecutors, have conducted an extensive, forensic analysis of Phoenix to determine the specifics of this fraud, including tracing the stream of payments from Phoenix to investors and others. The Applicant has had success locating and recovering assets of Phoenix. In this context, the Applicant has been and still is prosecuting actions against transferees worldwide seeking to recover transfers fraudulently made by Phoenix prior to the Application Date, and has already recovered substantial assets under such lawsuits. Because of these efforts, insolvency creditors are presently estimated to receive distributions from the insolvency estate of more than 30% of the amount of their filed insolvency claims.

The Applicant's investigation of the location of assets continues. A significant gap still remains between the amount amassed by the Applicant and the total amount of claims asserted by Phoenix's creditors.

**C. The Claims Against John Stender**

The Applicant pursues a claim in a separate Spanish proceeding (the "Spanish Proceeding") before the Juzgado de lo Mercantil No. 7 de Madrid, Spain (the "Spanish Court") (*Prodedimiento Ordinario* (ordinary proceeding) no. 1064/2007) against an individual named John Stender (the "Judgment Debtor"). On December 16, 2009, the Spanish Court awarded the Applicant a judgment (announced December 22, 2009) against the Judgment Debtor on the legal basis of German avoidance law (*acción de reintegración*), specifically § 129-147 of the German Insolvency Code (referred in the judgment as *ley de insolvencia alemana*), in an amount of EUR

123,237.67 (the "Spanish Judgment"). The Spanish Judgment is final and not appealable. Fernando del Valle represented the Judgment Debtor in the Spanish Proceeding.

The Judgment Debtor has not made any payment to the Applicant to satisfy the Spanish Judgment. In the Applicant's search for assets against which to enforce the Spanish Judgment, the Applicant discovered certain real property (the "Property") owned by Barsea Holdings SL ("Barsea"). The Judgment Debtor was the sole administrator of Barsea for a time. The business address of Barsea is identical to the address of the law firm of Mr. del Valle. The primary shareholder of Barsea is Deimos Corporation, a Delaware entity ("Deimos").

Applicant has reason to believe that Barsea is part of a group of sham companies set up for the sole purpose of concealing property. Mr. del Valle has been convicted for his participation in an international money laundering scheme. Mr. del Valle controlled several hundred shell companies (many incorporated in Delaware) whose primary purpose was to conceal assets.[1] In certain public filings with the State of Delaware Secretary of State, Mr. del Valle has identified himself as the president of Deimos.

Because of the links between (i) the Property and Barsea; (ii) the Judgment Debtor and Barsea; (iii) Barsea and Deimos; and (iv) the Judgment Debtor's lawyer, Mr. del Valle, and Deimos, and thus, the Property, the Judgment Debtor and Deimos in general, the Applicant has reason to believe that Deimos has had financial or other dealings with the Judgment Debtor. Therefore, it is important to the Applicant to obtain all relevant information connecting Deimos, Barsea and the Judgment Debtor to enable the Applicant to enforce the Spanish Judgment.

The registered agent of Deimos is The Corporation Trust Company ("CTC"). CTC is not a party to the German insolvency proceeding nor to the one concerning the Judgment Debtor

[1] *See* Reider-Gordan et al., *International Anti-Money Laundering*, 46 The International Lawyer 383 (Spring 2012) (attached as **Exhibit A**).

and, to the best of the Applicant's present knowledge, is not an insider of Phoenix. CTC's state of incorporation is Delaware. CTC also has a place of business in Wilmington, Delaware. The Applicant wishes to obtain discovery from CTC about Deimos.[2]

## II. ARGUMENT

The provisions of 28 U.S.C. § 1782[3] govern this Court's determination of whether to grant the discovery requested under the Application. "In exercising its discretion under § 1782, the district court should be guided by the statute's 'twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Al Fayed v. U.S.A.*, 210 F.3d 421, 424 (4th Cir. 1999) (quoting *In re Malev Hungarian Airlines,* 964 F.2d 97, 100 (2nd Cir. 1992)).

The Application is being submitted upon an *ex parte* basis, which is appropriate under § 1782 because the party targeted by this application will have ample opportunity to exercise its

[2] Concurrently with this Application, Applicant has filed a second related application to obtain discovery about Deimos from the entity itself.

[3] 28 U.S.C. 1782 states:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

due process rights in response to any subpoena issued. *See In re Roebers,* Case No. C12-80145, at *3 (N.D. Cal. Jul. 11, 2012) (unreported decision attached as **Exhibit B**) (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir. 1976)). Even if an objection is raised, "[i]nasmuch as relevant evidence is presumptively discoverable the party opposing discovery under section 1782(a) has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application." *In re Application of Chevron Corp.,* 633 F.3d 153, 162 (3rd Cir. 2011) (internal quotations omitted); *see also Intel Corp. v. Adv. Micro Devices, Inc.,* 542 U.S. 241, 247 (2004). As set forth below, the Application meets the express statutory requirements and discretionary factors under the *Intel* decision.

### A. The Application Meets the Legal Standard Under 28 U.S.C. § 1782.

The primary statutory requirements under 28 U.S.C. § 1782 are as follows: (1) the order must be issued by the "district in which a person resides or is found;" (2) the discovery must be "for use in a proceeding in a foreign or international tribunal"; and (3) the order may be issued "upon application of any interested person." *See* 28 U.S.C. § 1782; *Chevron,* 633 F.3d at 164. Further, the discovery sought must not be "in violation of any legally applicable privilege." *Id.*

This Application meets all factors. With respect to the first factor, the Application seeks discovery from CTC, which is a corporation organized under the laws of Delaware with a place of business in Wilmington. The Application is being presented to this Court, which possesses geographic jurisdiction over CTC.

The Application meets the second requirement as it seeks discovery for use in a foreign proceeding. "The principal requirement imposed by § 1782 is that the requested discovery be for use in 'a proceeding,'" which one appellate court has interpreted this to mean "a proceeding in

which an adjudicative function is being exercised." *See Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2nd Cir. 1996). Both the Spanish and German proceedings fulfill this requirement. In holding that an Italian insolvency proceeding met this standard, the appellate court in *Lancaster* opined that "[a] bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated. Such a proceeding is within the intended scope of § 1782." *Id.* at 42.

The Application fulfills the third statutory requirement as being brought by an "interested person." The individual submitting this Application is both the administrator in the German insolvency proceeding and a litigant in the Spanish Proceeding. *See Intel*, 542 U.S. at 256 (rejecting narrow reading of the term "interested person" and noting that "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . .").

Nor does the Application presently seek discovery of any protected information.[4] The Application does not run afoul of the attorney-client privilege because it does not presently seek discovery of any attorney-client communications.

The Application also does not presently intend to seek information that would otherwise be shielded by the work-product doctrine. This Court must analyze the discovery sought under a two-part test to determine if this doctrine would be implicated here:

> The first inquiry is the reasonable anticipation test, which requires that the court determine whether litigation could reasonably have been anticipated . . . [with the] relevant inquiry [being] whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. The second inquiry is whether the documents were prepared primarily for the purpose of litigation . . . as documents prepared for other purposes that prove useful in subsequent litigation are not attorney work-product.

[4] The Applicant does not intend to waive his right to argue in the future that an exception to the attorney-client privilege or work doctrine applies.

*Westwood Prod. Inc. v. Great Am. E & S Ins. Co.*, Case No. 10-3605, at *20 (D.N.J. Aug. 1, 2011) (unreported decision attached as **Exhibit C**) (internal quotations and citations omitted). The burden of proof rests with the party asserting this doctrine. *See id.* (citing *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008) and *Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3rd Cir. 1982)). Applicant believes that the categories of items sought by him would result in the production of materials not primarily prepared in anticipation of litigation and, as such, would not be protected under this test. However, to the extent that it is determined that this protection applies to shield certain items, this Court can merely tailor any order to protect those items but otherwise grant the relief sought in the Application. *See Chevron*, 633 F.3d at 164 n.18.

### B. The Supreme Court's *Intel* Discretionary Factors Favor Granting the Application.

In addition to the express statutory factors, the Supreme Court has set forth the following discretionary factors for a district court to consider when analyzing an application under § 1782: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding;' (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the Section 1782 request is an attempt to 'circumvent foreign proof gathering restrictions;' and (4) whether the documents and testimony sought are 'unduly intrusive or burdensome.'" *In re Chevron Corp.*, 753 F. Supp. 2d 536, 539 (D. Mass. 2010) (quoting *Intel*, 542 U.S. at 264-65). The burden of proof in connection with an application pursuant to the *Intel* factors is upon the party opposing it. *See Chevron*, 633 F.3d at 162.

Under the first *Intel* factor, CTC is not a participant in the German insolvency proceeding nor the one involving the Judgment Debtor before the Spanish Court. Consequently, absent the

relief sought by this Application, CTC, as a Delaware corporation, may be beyond the reach of any foreign proceeding in this matter. *See Intel*, 542 U.S. at 264 (noting that the inability of the foreign tribunal to assert its jurisdictional reach to the non-participant and, hence, the possibility that the evidence sought may not be obtainable elsewhere weigh in favor of granting a § 1782 application under this prong).

The second *Intel* factor favors granting the Application. The Applicant submits that the German Court and the Spanish Court would be very receptive to the type of discovery sought by the Applicant as part of this Application. Information about Deimos assists the Applicant in fulfilling his fiduciary duty of marshaling the assets of the insolvent's estate to maximize recovery for its creditors. The Applicant is not aware of any legal argument that could prevent the use of the information sought in either the German insolvency proceeding or in the Spanish enforcement proceeding. Further, "[p]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can be offset by reliable evidence that the tribunal would reject the evidence." *In re Application of Owl Shipping, LLC,* Case No. 14-5655, at *6 (D.N.J. Oct. 17, 2014) (quotations and citations omitted) (unreported decision attached as **Exhibit D**).

Under the third *Intel* factor, the Applicant is unaware of any foreign discovery prohibitions barring the discovery sought in the Application, and the Applicant is not attempting to circumvent foreign proof-gathering restrictions. It should be noted that the "for use" language of § 1782 does not specifically require that the discovery sought be discoverable or admissible. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 82 (2nd Cir. 2012).

Under the fourth *Intel* factor, the Applicant is currently requesting information about Deimos from only two sources (CTC and the entity itself). The proposed subpoena attached to

this Application only requests documents within the target's possession. Further, the Applicant believes it accords with his fiduciary obligations to investigate the roles of Barsea, Deimos and Mr. del Valle with the Judgment Debtor. An undue burden is not placed upon CTC to provide the Applicant with the requested information under these circumstances. The Applicant submits that he has met this fourth factor.

WHEREFORE, the Applicant respectfully requests that this Court enter an order substantially in the form appended hereto and grant it such further relief as this Court deems just and proper.[5]

Dated: December 9, 2014
Wilmington, Delaware

Respectfully submitted,

HILLER & ARBAN, LLC

**/s/ Brian Arban**
Adam Hiller (DE No. 4105)
Brian Arban (DE No. 4511)
Johnna Darby (DE No. 5153)
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
(302) 442-7676 telephone
ahiller@hillerarban.com
barban@hillerarban.com

*Attorneys for Applicant*

[5] Applicant also notes that he obtained copies of the public filings of Deimos with the Delaware Secretary of State prior to filing this Application. His review of these filings did not provide Applicant sufficient information for purposes of his inquiry.